## Augustus W. Phillips v. People's Passenger Railway Company, Appellant.

*Negligence—Street railways—Duty of motorman—Runaway horse.*

When a motorman is confronted by a sudden and immediate danger, such as a runaway horse at a crossing, he is not required to do what, after mature deliberation, would have seemed to a prudent man to be the wisest thing under the circumstances.

Where the sole basis of liability is the omission to perform a certain duty suddenly and unexpectedly arising, there must be, not only a consciousness of the facts which raise the duty on the part of the person who is charged with its performance, but also a reasonable opportunity to perform it.

Argued Jan. 4, 1899. Appeal, No. 126, Jan. Term, 1898, by defendant, from judgment of C. P. No. 4, Phila. County, Dec. Term, 1895, No. 816, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before WILLSON, J.

At the trial it appeared that on Sunday morning, July 28, 1895, plaintiff, while riding a horse, was injured in the manner described in the opinion of the Supreme Court.

Defendant's point and the answer thereto were as follows:

Upon all the evidence in this case the verdict must be for the defendant. *Answer :* Refused.

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Error assigned* was above instruction, quoting it.

*Hampton L. Carson*, with him *Dimner Beeber* and *J. Levering Jones*, for appellant.—To render the defendant liable in this case it must appear by the evidence that the negligence, if any, of the defendant, must have been the sole efficient cause of the injury, and if the jury find from the evidence that this accident to the plaintiff was caused by his uncontrollable and runaway horse, or from this cause concurring with the defendant's negligence, then the verdict must be for the defendant: Schaeffer v. Jackson Twp. 150 Pa. 145; Chartiers Twp. v. Phillips, 122 Pa. 601; Willis v. Armstrong County, 183 Pa. 184; Gillmore v. Federal St., etc., Pass. Ry. Co., 153 Pa. 31; Schnur v. Citizens' Traction Co., 153 Pa. 29.

One is not chargeable with negligence if there is not want of time to form a judgment or to act in the most judicious manner: Hestonville, etc., R. R. Co. v. Kelley, 102 Pa. 115; Brown v. French, 104 Pa. 604; Sandford v. Hestonville, etc., R. R. Co., 136 Pa. 84; Sekerak v. Jutte, 153 Pa. 117; Floyd v. Phila. & Reading R. R. Co., 162 Pa. 29; Donahue v. Kelly, 181 Pa. 93; McManigal v. South Side Pass. Ry. Co., 181 Pa. 358.

*Milton C. Work*, with him *Alex. M. De Haven*, for appellee.— Plaintiff was not guilty of contributory negligence: Gillmore v. Federal St., etc., Pass. Ry. Co., 153 Pa. 31; Carson v. Federal St., etc., Ry. Co., 147 Pa. 219; Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180; Omslaer v. Pittsburg, etc., Traction Co., 168 Pa. 519.

The motorman of the car of the defendant was guilty of negligence: Yoders v. Amwell Twp., 172 Pa. 447; Schnur v. Citizens' Traction Co., 153 Pa. 29; Citizens' Pass. Ry. Co. v. Foxley, 107 Pa. 537; Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180; Carson v. Federal St., etc., Ry. Co., 147 Pa. 219; Aiken v. Penna. R. Co., 130 Pa. 380.

OPINION BY MR. JUSTICE FELL, March 13, 1899:

It appears from the testimony that the plaintiff's horse became unmanageable at Woodland avenue and Walnut street, and ran with him down Walnut to the crossing of Fourth street, where the accident occurred. During all this time, although the plaintiff kept his seat, the horse was more or less beyond his control and at the time of the accident it appears to have

been a runaway going at a high rate of speed. When from sixty to eighty feet from the crossing of Fourth street, and on the south side of Walnut street between the curb and the car track, the plaintiff saw a car which was going south on Fourth street and about to cross Walnut. As soon as he saw the motorman, the plaintiff called to him to stop the car. The motorman, however, either did not hear, or if he heard elected to do otherwise, for the car proceeded to cross the street, and the horse ran into it, causing the plaintiff's injury.

We are unable to see in this testimony any evidence of negligence on the part of the motorman. There is no evidence that he heard the plaintiff call to him or that he was otherwise made aware of the approach of the runaway horse. It was his duty, undoubtedly, to look for approaching cars and other vehicles which might collide with his car; but anything moving with the speed of a runaway horse was not to be apprehended, and he might very well have assured himself that none of the ordinary dangers of street crossings threatened him without having either heard or seen the approach of the plaintiff. He had not brought his car to a full stop at the crossing, nor was there, as far as the testimony shows, any reason why he should. A motorman certainly cannot be required to stop at every crossing and look for such extraordinary perils as the one in this case, nor can he be required to stop at all unless the circumstances are such that it would be imprudent for him to do otherwise. In this case, it being Sunday and the streets consequently comparatively clear of travel, and there being nothing on Walnut street which, if moving at a reasonable rate of speed, would have collided with him, a full stop would have been entirely uncalled for.

But even assuming that he knew the situation perfectly, it cannot be said that he was bound upon being confronted by so sudden and immediate a danger to do what after mature deliberation would have seemed to a prudent man to be the wisest thing under the circumstances. Where the sole basis of liability is the omission to perform a certain duty suddenly and unexpectedly arising, there must be not only a consciousness of the facts which raise the duty on the part of the person who is charged with its performance, but also a reasonable opportunity to perform it: Hestonville, etc., R. R. Co. v. Kelley, 102 Pa

115.  And what opportunity had this man?  If he had any notice of the impending danger, it must have come to him when he was well started on his way across the street, and it is quite possible that he took the best course which could have been conceived upon such short notice.  The outcome, it is true, was disastrous; but how could the jury say that he, with the duty uppermost in his mind of saving his passengers if possible from an imminent collision, did not judge, and that with reason, that his best chance of doing so lay in attempting to clear the runaway's course ahead of it?  And how could they say that such a course would not have seemed to the majority of prudent men, if placed as he was, to have been the best?  If he had stopped the car, it is probable that it would have lain directly across the middle of the street, or nearly so; and if he knew anything of horses, he knew that no human foresight can predict the course of a runaway, even for a short space, and that the horse was as likely to attempt to go around his car at the rear as at the front, and that if maddened by fright it might dash into his car no matter in what part of the street it was.

The second assignment of error is sustained, and the judgment is reversed.